IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DAIRHA JANE READ** | * | |
| | * | |
| v. | * | Civil Case No. GJH-15-2684 |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY** | * | |
| | * | |

************

REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case has been referred to me for review of the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). The Plaintiff, Dairha Jane Read, who is appearing *pro se,* did not file a motion for summary judgment and did not respond to the Commissioner's Motion for Summary Judgment.[1] I have considered the Commissioner's pending Motion for Summary Judgment. [ECF No. 17]. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). For the reasons set forth below, I recommend that the Commissioner's motion be denied, the decision of the Commissioner be reversed in part, and the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Read protectively filed her applications for benefits on March 5, 2012, alleging a disability onset date of April 29, 2011. (Tr. 193-204). Her applications were denied initially and on reconsideration. (Tr. 127-31, 137-40). A hearing was held in her case on July 29, 2014. (Tr.

---

[1] On March 30, 2016, this Court sent Ms. Read a Rule 12/56 letter, informing her that she had seventeen (17) days to respond to the Commissioner's Motion for Summary Judgment or the Court could enter judgment without further notice.

29-60). After the hearing, the Administrative Law Judge ("ALJ") issued an opinion denying benefits. (Tr. 11-28). The Appeals Council ("AC") denied review, making the ALJ's decision the final, reviewable decision of the Agency. (Tr. 1-5).

The ALJ found that, during the relevant time frame, Ms. Read suffered from the severe impairments of degenerative disc disease with radiculopathy, migraine headaches, bipolar disorder, posttraumatic stress disorder, and attention deficit hyperactivity disorder. (Tr. 13). Despite these impairments, the ALJ determined that Ms. Read retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that she is able to lift ten pounds occasionally, and less than ten pounds frequently. She is able to sit for six hours, and stand or walk for two hours in an eight-hour day. She is able to occasionally reach overhead bilaterally. She is able to frequently handle, finger, and feel with the hands bilaterally. She can constantly push or pull with her hands bilaterally. She can occasionally climb stairs or ramps, but can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, or crouch. She can never crawl. She can never be around unprotected heights, moving mechanical parts, or vibrations. She can understand, remember, and carry out short, simple instructions. She can have occasional contact with supervisors, coworkers, and the public.

(Tr. 16). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Ms. Read could perform, namely the jobs of "cutter and paster," "telegraph service rater," and "addresser." (Tr. 22). Therefore, the ALJ concluded that Ms. Read was not disabled. (Tr. 22-23).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary

record whether substantial evidence supports the ALJ's findings).  For the reasons described below, while substantial evidence supports some portions of the ALJ's decision, the analysis is deficient under the recent Fourth Circuit opinion in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015).  Accordingly, I recommend remand.

At step one, the ALJ found in Ms. Read's favor that she had not engaged in substantial gainful activity since her alleged onset date.  (Tr. 13).  At step two, the ALJ found the severe impairments listed above.  (Tr. 13-14).  The ALJ also assessed a variety of other mental and physical diagnoses, but concluded that those impairments were non-severe. *Id.*

At step three, the ALJ specifically considered physical listings 1.04 and 11.05, but noted that Ms. Read did not establish that either listing had been met or equaled.  (Tr. 14).  The ALJ also applied the special technique for evaluation of mental impairments to consider listings 12.04, 12.06, and 12.10.  (Tr. 15-16).  The ALJ concluded, among other findings, that Ms. Read had moderate difficulties in concentration, persistence, or pace.  (Tr. 15).

In considering the appropriate RFC assessment, the ALJ provided a summary of Ms. Read's written statements and hearing testimony.  (Tr. 17).  The ALJ also analyzed the medical evidence derived from treatment notes and consultative examinations, including the results of objective testing.  (Tr. 17-19). The ALJ summarized the types of treatment Ms. Read has received, and noted symptom improvement with treatment and some non-compliance with prescribed medication.  (Tr. 19).  The ALJ concluded, following the analysis, that Ms. Read's treatment records and activities of daily living were inconsistent with her allegations of limitations. (Tr. 19-20).  In making that finding, the ALJ also assigned weight to several medical sources, including a treating psychiatrist, examining source, and the State agency physicians. (Tr. 20-21).

Continuing at step four, the ALJ found that Ms. Read was unable to perform her past relevant work as a bartender. (Tr. 21). At step five, the ALJ posed hypotheticals to the VE to determine whether a person with each set of hypothetical criteria would be able to find work. (Tr. 55-58). Ultimately, the ALJ determined that Ms. Read's RFC matched one of the hypotheticals he had posed. (Tr. 16). The VE cited several jobs, including "cutter and paster of press clippings," "telegraph service rater," and "addresser," in response to that hypothetical, and the ALJ relied on that VE testimony in his opinion. (Tr. 22, 56-57).

The function of this Court is not to review Ms. Read's claims *de novo* or to reweigh the evidence of record. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (citing 42 U.S.C. § 405(g) and *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972)). Rather, this Court is to determine whether, upon review of the whole record, the Commissioner's decision is supported by substantial evidence and a proper application of the law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also* 42 U.S.C. § 405(g). I am unable to recommend that finding here.

While this case was pending, the Fourth Circuit issued its opinion in *Mascio*, a Social Security appeal in the Eastern District of North Carolina. In *Mascio*, the Fourth Circuit determined that remand was warranted for several reasons, including a discrepancy between the ALJ's finding at step three concerning the claimant's limitation in concentration, persistence, and pace, and his RFC assessment. 780 F.3d at 638.

At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 et. seq., pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. Most listings therein consist of: (1) a brief statement describing its subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3)

"paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(c)(2), 416.90a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.*; §§ 404.1520a(c)(4), 416.920a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas, along with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function." *Id.* § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). Social Security regulations do not define marked limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations, however, offer little guidance on the meaning of "moderate" limitations in the area of concentration, persistence, or pace.

The RFC assessment is distinct, but not wholly independent, from the ALJ's application of the special technique at step three. In *Mascio*, the Fourth Circuit voiced its agreement with other circuits "that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (joining the Third, Seventh, Eighth, and Eleventh Circuits) (citation and internal quotation marks omitted). The Fourth Circuit explained that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* In so holding, however, the Fourth Circuit noted the possibility that an ALJ could offer an explanation regarding why a claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC assessment, such that the apparent discrepancy would not constitute reversible error.

In this case, at step three, the ALJ's analysis consisted, in its entirety, of the following:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant reported having difficulty remembering, concentrating, completing tasks, and following instructions (Exhibits 4E and 8E). However, treating medical sources noted that the claimant exhibited motor activity within normal limits, normal cognition, intact memory, intact immediate recall, intact long-term recall, no psychosis, no hallucinations or delusions, and no impulsivity upon examination (Exhibits 5F, 10F, 14F, 15F, 16F, 20F, 22F, and 23F). Likewise, the claimant's ability to provide care to her minor children, take care of her personal needs without assistance, prepare simple food daily, was laundry, shop in stores, handle her own money without assistance, count change, handle a savings account, use a checkbook/money orders, watch television daily, watch movies, and attend church, indicates that her limitations in this area are no more than moderate (Exhibits 4E, 8E, and 13E).

(Tr. 15). The RFC states only that, "She can understand, remember, and carry out short, simple instructions," but makes no reference to her ability to sustain concentration or persist in those tasks over an eight-hour workday. (Tr. 16). In the RFC analysis, the ALJ says little about

6

concentration, persistence, or pace, other than noting that the State agency psychological consultants determined that Ms. Read had moderate limitations in "sustained concentration and persistence." (Tr. 21). In light of the finding of moderate limitations, under *Mascio,* more analysis is required to justify the lack of an RFC limitation addressing concentration and persistence. Remand is therefore appropriate. In recommending remand, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Read is not entitled to benefits is correct or incorrect.

While not an independent ground for remand, I also note that all three of the hypothetical jobs identified by the VE in this case, and relied upon by the ALJ to find that Ms. Read could perform work existing in significant numbers in the national economy, are patently obsolete. The VE testified that the hypothetical individual could perform the reduced sedentary jobs of "a cutter and paster of press clippings," of which there are allegedly "approximately 353,000 in the national economy," "a telegraph service rater," of which there are allegedly "approximately 204,000 in the national economy," and "an addresser," of which there are allegedly "approximately 48,000 in the national economy." (Tr. 56-57). The VE testified that those answers were consistent with the Dictionary of Occupational Titles ("DOT"), a document published by the United States Department of Labor and last updated in 1991. United States Department of Labor, Dictionary of Occupational Titles (4th Ed., Rev.1991), *available at http://www.oalj.dol.gov*. In the DOT, the three positions cited by the VE are described as follows:

> **249.587–014 CUTTER–AND–PASTER, PRESS CLIPPINGS (business ser.) alternate titles: tearer, press clipping; trimmer, press clippings**
>
> Tears or cuts out marked articles or advertisements from newspapers and magazines, using knife or scissors. Records name of publication, page and location, date, and name of customer on label, and affixes label to clipping.

7

**214.587-010 TELEGRAPH-SERVICE RATER (tel. & tel.) alternate titles: clerk, rating; rate marker**

Counts number of words in telegrams dispatched from telegraph office, consults rates in rate book, and marks charges on duplicates of messages for use in billing customers.

**209.587-010 ADDRESSER (clerical) alternate titles: addressing clerk; envelope addresser**

Addresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail.

The Social Security Administration ("SSA") commissioned an "Occupational and Medical-Vocational Claims Review Study" in 2011. The final results are available on the SSA's website. ADD IN THE CITE. In relevant part, the study found "a substantial number of cases where [the adjudicator] cited jobs that might be obsolete." *Id.* at 7. The study determined that "[a]ddresser" was cited in almost 10% of the step 5 denial cases reviewed, and "[c]utter-and-[p]aster, [p]ress [c]lippings" was cited in almost 1% of those cases. *Id.* The study went on to concede, "*It is doubtful that these jobs, as described in the DOT, currently exist in significant numbers in our economy." Id. (*emphasis in original). Thus, in Ms. Read's case, the SSA relies upon two jobs that its own experts doubt still exist in significant numbers, and a third job involving counting the number of words in telegrams, which are no longer in wide use in the decades since the advent of the Internet and word-counting computer software.

Although the Fourth Circuit has not yet addressed the difficulties presented by the advanced age of the DOT, the United States Court of Appeals for the Sixth Circuit considered a similar issue several years ago in *Cunningham v. Astrue,* 360 Fed. Appx. 606, 615 (6th Cir. 2010). The Sixth Circuit opined:

> The VE based his testimony on job descriptions contained in the Dictionary of Occupational Titles ("DOT"), a document published by the Department of Labor

> that was more than a decade old when the ALJ heard Cunningham's claim. While the Social Security Commissioner does take administrative notice of this document when determining if jobs exist in the national economy, 20 C.F.R. § 404.1566(d)(1), common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted . . . In light of the fact that more current job descriptions were available at the time of the hearing before the ALJ—the Department of Labor replaced the DOT with the Occupational Information Network (O*NET), a database that is continuously updated based on data collection efforts that began in 2001—and that the two descriptions relied on by the VE are not found in O*NET, we conclude that the VE's dependence on the DOT listings alone does not warrant a presumption of reliability.

*Id.* at 615–16. The rationale in *Cunningham* is equally applicable to the jobs at issue in this case. None of the three jobs are found, either in an identical or substantially similar fashion, in O*NET. As a result, one could conclude that the ALJ's reliance on the VE testimony that those positions exist in significant numbers in the national economy is not, on the current record consisting exclusively of the VE's reliance on a twenty-year-old document, supported by substantial evidence. *See also Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014) ("If the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist), the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs).

The standard for work that exists in "significant numbers" in the national economy is not a high one. *See Lawler v. Astrue*, No. 09-1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that the fact that there were only 75-100 jobs in the region where plaintiff lives "does not undermine the ALJ's conclusion that plaintiff is capable of performing work that exists in significant numbers in the national economy."); *Hicks v. Califano*, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number). However, given the nature of the jobs identified by the VE and the ALJ in this case, a reasonable

person would question whether even small numbers of those positions remain available in the United States. Since this case is being remanded on other grounds, on remand, I recommend that the ALJ ensure that there is substantial evidence that Ms. Read can perform jobs that are actually available in significant numbers in 2016.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court DENY Defendant's Motion for Summary Judgment, [ECF No. 17]; REVERSE IN PART the decision of the Commissioner; REMAND the case to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this Report and Recommendations; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: May 6, 2016                                          /s/

                                                                              Stephanie A. Gallagher
                                                                              United States Magistrate Judge